

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

**GROVER SELLERS**
**ATTORNEY GENERAL**

Honorable John H. Winters, Executive Director
State Department of Public Welfare
Austin 5, Texas

Dear Sir:

Opinion No. O-6607
Re: Authority of Department of Pub-
lic Welfare to expend up to
three per cent of the amount
expended for assistance out
of all funds, State and Federal,
for administrative purposes
under H. B. No. 89, 49th Legis-
lature.

Your request for an opinion of this department reads
as follows:

"Section 1 of House Bill 89 amends Subsec-
tion (4), Section 2, Article XX of House Bill
6, Acts of the 47th Legislature, as amended, so
as to read in part as follows:

"'. . . . . Provided that the total adminis-
trative expenses of all kinds out of State funds
for the remainder of the biennium shall never
exceed three per cent (3%) of the total amount
expended for assistance out of all funds, State
and Federal. In the event that the itemized ap-
propriations for administration require less
payment out of State funds than three per cent
(3%) of the total amount expended for assist-
ance out of all funds, State and Federal, and
the necessity therefor exists, and the State
Board of Public Welfare finds and declares in
writing that such necessity exists, then the
State Department of Public Welfare is authorized
to pay additional employees or pay additional
maintenance. . . . .'

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"Under this provision of the Act, may the Department of Public Welfare expend for administrative purposes, out of State Funds, up to three per cent (3%) of the amount expended for assistance out of all funds, State and Federal?

"If you answer the first question in the affirmative, then, what procedure should be followed by the State Board of Public Welfare in invoking this provision of the law?

"Would an entry in the minutes of the State Board of Public Welfare, setting forth the facts and that the necessity for the use of the funds exists, be sufficient to comply with this provision of the Act?

". . . ."

In answering your question we think it should be borne in mind that the Old Age Assistance Program is a Federal-State undertaking the very existence of which depends upon the matching of funds by the two jurisdictions. The uncertainty of the amount of Federal funds which will be made available during any biennium and the consequent inability to anticipate the exact needs of the department administering those funds defies the traditional pattern of legislative appropriation made in line items and amounts.

This dilemma was obviated by the 48th Legislature by setting forth some two hundred and fifty items of appropriation together with a special provision following those items which appropriated $1,500,000.00 "to the State Department of Public Welfare out of the Old Age Assistance Fund for each month of the biennium beginning September 1, 1945, and ending August 31, 1945, for old age assistance payments, and for salaries, equipment, supplies, travel, maintenance, and contingent expenses necessary in the extension of old age assistance, including the State's portion of the items listed above". This special provision, after authorizing the Department of Public Welfare to accept and use Federal funds for administrative expenses in addition to the State funds appropriated, contains the following provision:

"Provided that the total administrative expenses of all kinds out of State funds for the

biennium shall never exceed 3% of the total amount expended for assistance out of all funds, State and Federal. In the event that the above total itemized appropriations for administration require less payment out of State funds than 3% of the total amount expended for assistance out of all funds, State and Federal, and the necessity therefor exists, and the State Board of Control finds and declares in writing that such necessity exists, then the State Department of Public Welfare is authorized to hire additional employees or pay additional maintenance and miscellaneous expenses to the extent authorized by the State Board of Control out of the $1,900,000.00 above appropriated for each month of the biennium; and provided further that in no event whatsoever shall the total expenditures for administration and all expenses out of State funds ever exceed 3% of the total expenditures for assistance out of all funds, State and Federal. No additional employees shall be paid larger salaries than those above fixed for employees rendering similar services and having similar responsibilities."

See Ch. 400, Acts of the Regular Session, 48th Legislature, pps. 991-997, inclusive. Thus it is seen that the Legislature appropriated $1,900,000.00 per month to this agency for all purposes and absolutely limited the portion thereof to be spent for administrative purposes to 3% of the total State and Federal assistance paid. Recognizing that administrative demands would vary according to the amount of assistance to be paid which in turn would depend on the total Federal allotments to be made during the biennium, the Legislature provided contingent administrative expenses, in addition to those itemized in the bill, provided the total use for that purpose did not exceed 3% of the total assistance paid from both State and Federal sources. The Board of Control was vested with the authority to determine the necessity of additional administrative expense within the tolerance allowed by the law.

In providing funds for the expenditures discussed above, the Legislature authorized the transfer and allocation of certain State revenues to the Old Age Assistance Fund in an amount sufficient to maintain that fund at $1,900,000.00 per month. Art. 7083a, Sec. 2(4), V.A.C.S. (H. B. No. 9, Ch. 365, Acts. Regular Session, 48th Leg., p. 637).

The law you inquire about, H. B. No. 89, Acts of the Regular Session, 49th Legislature, amended Art. 7083a, Sec. 2(4), V.A.C.S. for the purpose of providing additional funds, up to $2,200,000.00 per month for the Old Age Assistance Fund for the remainder of the biennium ending August 31, 1945. Section 1 of this Act provides in part, that, "The funds now on hand in, or hereafter deposited to the credit of, the Old Age Assistance Fund are hereby appropriated for the uses and purposes prescribed by law, subject, however, to the provisions of this Act." The same section includes a proviso almost indentical with that above quoted from the special provision of the General Appropriations Bill. One difference is that the Board of Public Welfare is substituted for the Board of Control in the matter of determining the necessity for additional administrative expenditures. Sec. 2 of H. B. 89 provides that "All laws in conflict herewith are hereby repealed to the extent of such conflict only."

In passing upon the validity of H. B. 89, it must be read in connection with the General Appropriations for Old Age Assistance in so far as the latter is consistent therewith. One must look to the former enactment for the purposes to which the emergency appropriation may be devoted. The validity of both enactments is involved. For a discussion of questions similar to those here considered see the opinions of this Department numbered O-1389 and O-1389-A which are enclosed.

Although the appropriations contained in H. B. 89 are not in the usual form we see no legal objection to it. It is our opinion that it does not offend Sec. 6 of Art. 8 of our Constitution requiring appropriations to be "specific". The definite sum of $2,200,000.00 is appropriated and within that sum a further limit is placed upon the administrative expenditures. Our courts have approved an appropriation of all moneys deposited in the "state highway fund" though no maximum limit was set thereon. Atkins v. State Highway Dept., (Tex. Civ. App.) 201 S. W. 226. See also 38 Tex. Jur. 844. Furthermore our Supreme Court has upheld an appropriation of $25,000.00 "for the purpose of paying any and all necessary expenses in bringing suits or paying expenses in prosecuting same --- to be expended under the direction of the Attorney General by and with the approval of the Governor . . . . ." Terrell v. Sparks, 135 S. W. 519. We see no distinction between the above provision requiring the approval of the Governor and that under consideration which requires the Board of Public Welfare to determine the necessity for certain admin-

istrative expenditures. It is said in Sutherland, Statutory Construction, (3rd Ed.) Vol. 1, Sec. 303 at p. 56, that,

> "Incident to the separation of powers doctrine was the corollary that the legislative power could not be exercised by any agency of the government save the legislature. The first modification of the rule appeared in cases which held that the authorization of the executive or administrative agency to determine facts upon which a complete legislative enactment was to go into operation was not a delegation of legislative power."

See also State v. Zimmerman, (Wis.), 197 N. W. 823.

We are not/aware of the decisions of National Biscuit co. v. State, (Sup.), 135 S. W. (2d) 687, and State v. Angelina County, (Comm. of Apps.), 150 S. W. (2d) 379, both of which declared the appropriation it had under consideration as violating Art. 8, Sec. 6 of our Constitution. We think these cases may be readily distinguished from the one under consideration. Neither of the condemned appropriations set a definite amount or even a maximum amount to be expended, and both were for a longer period than two years.

Another consideration which we think is pertinent to our conclusion and which was referred to generally in the outset is the fact that any Federal-State project is adopted by the state at the expense of its own sovereignty. A surrender of State control in any degree makes the State's governmental processes less certain. In the matter under consideration, the appropriations to old age assistance are probably set forth with all the certainty which is practicable if an efficient functioning of the program is to be effected. It is our view that our courts would go a long way and have gone a long way in sustaining these joint projects that are now considered so vital to our welfare. See Friedman v. American Surety Co. (Sup.), 151 S. W. (2d) 576.

It is concluded that H. B. 89 makes a valid appropriation of $2,200,000.00 per month for the remainder of the biennium for old age assistance and that up to 3% of the total amount of Federal and State funds paid for assistance is appropriated out of said funds for administrative expenses upon a written finding by the Board of Public Welfare that a necessity therefor exists.

We think no special wording or form is required for the action of the Board of Public Welfare so long as it declares the necessity in writing according to the terms of the statute.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

    (s)  Eugene Alvis
          Assistant

EA:mp:ls

APPROVED APRIL 12, 1945
Grover Sellers
Attorney General of Texas

APPROVED
Opinion
Committee
By BWB
Chairman